IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Heath Allan Pettry,                    :

        Plaintiff,              :

     v.                               :      Case No.  2:15-cv-0163

Carolyn W. Colvin, Acting       :      JUDGE MICHAEL H. WATSON
Commissioner of Social Security,       Magistrate Judge Kemp

        Defendant.              :


<u>REPORT AND RECOMMENDATION</u>

I.  <u>Introduction</u>

    Plaintiff, Heath Allan Pettry, filed this action seeking
review of a decision of the Commissioner of Social Security
denying his applications for disability insurance benefits and
supplemental security income.  Those applications were filed on
July 4, 2011, and alleged that Plaintiff became disabled on April
28, 2011.

    After initial administrative denials of his claim,
Plaintiff was given a hearing before an Administrative Law Judge
on May 28, 2013.  In a decision dated July 10, 2013, the ALJ
denied benefits.  That became the Commissioner's final decision
on November 24, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the
administrative record on April 20, 2015.  Plaintiff filed his
statement of specific errors on July 27, 2015, to which the
Commissioner responded on October 14, 2015.  Plaintiff filed a
reply brief on November 2, 2015, and the case is now ready to
decide.

II.  <u>The Lay Testimony at the Administrative Hearing</u>

Plaintiff, who was 40 years old at the time of the administrative hearing and who has a tenth grade education, testified as follows.  His testimony appears at pages 35-46 of the administrative record.

Plaintiff first said that he had not worked in over two years.  He had been a driver for Advanced Auto Parts, and also did some counter work for that company.  Previously, he had been a delivery driver for a paint company, and worked as both a driver and manager for CarQuest.  At the time of the hearing, he walked with a cane, which a doctor had prescribed for him.  He needed it due to the effects of his neuropathy.

On a typical day, Plaintiff could walk or stand only 20 or 25 minutes.  Sitting was difficult also due to hip pain, and he spent most of his time lying down.  He did not lift over five pounds.  He had left hand numbness and frequent dizzy spells, often accompanied by blackouts.  He watched television and was able to follow a program.

Socially, Plaintiff visited with his sisters or his in-laws. He occasionally became anxious in crowds of people.  He could take care of his personal needs and drive, but he did no household chores.  His pain medications made him tired.

Plaintiff testified that his most serious problem was constant leg pain.  He took oxycodone, Fentanyl, and Neurontin for the pain.  He also had occasional swelling in his legs.  His blood sugar was constantly high, and he had recently been diagnosed with sleep apnea.  A CPAP machine was helping with that.

### III.  The Medical Records

The medical records in this case are found beginning on page 220 of the administrative record.  The Court will summarize only those records which the parties have focused on in support of their respective arguments.

-2-

Plaintiff's statement of errors accurately summarizes the number of times that, from 2010 to 2013, Plaintiff was either admitted to the hospital or treated in the emergency room.  The records shows that he was hospitalized fourteen times and treated at the emergency room ten times (some of which led to a subsequent hospitalization).  Most of these admissions or visits were caused by his diabetes or diabetic neuropathy (and associated symptoms such as pain and syncope), although some related to other conditions such as chest pain, shortness of breath, or a hernia.  <u>See</u> Statement of Errors, Doc. 14, at 4-7.  As Plaintiff construes those records, he was averaging 2.68 days of hospital treatment per month, and 3.36 days of treatment in a hospital setting.

In the responsive memorandum, the Commissioner does not dispute either Plaintiff's summary of the records or his calculation of the days of hospital or emergency room treatment, but points out two facts which the Commissioner deems important to placing the issue in perspective.  First, the Commissioner observes that no treating source expressed the opinion that Plaintiff would miss three days of work per month.  Second, the Commissioner cites to various statements in the record suggesting that the frequency and severity of Plaintiff's need for treatment arose from his lack of compliance with directives from his physicians, including failing to monitor his blood sugar levels and his failure to stop smoking.  There are also notes indicating that when he was medication-compliant, his diabetes was well-controlled.  <u>See</u> Memorandum in Opposition, Doc. 19, at 3-7.

IV.  <u>The Vocational Testimony</u>

Dr. Jerry Olsheski was the vocational expert in this case.  His testimony begins on page 47 of the administrative record.

First, Dr. Olsheski was asked to characterize Plaintiff's past relevant work.  He said that the delivery driver job was

-3-

medium and semiskilled; the paint sales representative job was light and skilled; and the same was true for the retail store manager job.  None of those skills would transfer to sedentary work.

Next, Dr. Olsheski was asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could lift and carry at the light exertional level, but who could only stand or walk for four hours in a workday, sit for six hours, frequently stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs and balance, and could never climb ladders, ropes, or scaffolds.  The person also had to avoid all exposure to hazards such as unprotected machines and unprotected heights.  Such a person could not, in Dr. Olsheski's opinion, do Plaintiff's past work, but he or she could work as a production assembler, production inspector, or hand packer. Someone who could only occasionally push and pull bilaterally with the legs could do those jobs, as could someone who was limited to sedentary work with occasional standing, walking, bending, pushing, and pulling, and who could do no commercial driving.  However, a person who could lift only five pounds, could do no grasping or fingering with the non-dominant hand four to five days per month, and who would miss three days of work per month could not be employed.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-24 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015.  Second, he found that Plaintiff had not engaged in substantial gainful activity since his onset date of April 28, 2011.

-4-

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including type II diabetes mellitus, diabetic neuropathy, congestive heart failure, syncope, hypertension, chronic obstructive pulmonary disease, and obstructive sleep apnea.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work which did not require more than occasional standing, walking, bending, pushing, and pulling.  He also had to avoid all climbing and exposure to unprotected heights and hazardous machinery and could not perform commercial driving.

The ALJ found that, with these restrictions, Plaintiff could not do any of his past relevant work.  However, he could do the three sedentary jobs identified by Dr. Olsheski.  The ALJ further found that these jobs existed in significant numbers in the regional and national economies (2,000 jobs regionally and 310,000 nationally).  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises a single issue, which he phrases as follows: "The Administrative Law Judge's decision is not supported by substantial evidence as the ALJ failed to consider Plaintiff's absenteeism when assessing Plaintiff's residual functional capacity."  Statement of Errors, Doc. 14, at 1.  This issue is reviewed under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the

-5-

Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The difference in the parties' positions is reflected in the way they characterize the facts and the significance of those facts.  Plaintiff's characterization, and argument, are straightforward.  He notes that the objective evidence supports his claim that he was hospitalized for 63 days in 21-month span.  He then argues that the ALJ did not account for this fact in the RFC finding.  The Commissioner contends that many times, Plaintiff ended up in the hospital due to non-compliance with treatment, and that the ALJ reasonably concluded that Plaintiff's severe impairments did not, themselves, prevent him from attending work on a regular basis.  The Commissioner also argues

-6-

that the ALJ properly found Plaintiff not to be fully credible. However, as Plaintiff notes, he is relying not on his own testimony about missing work but on the hospital records themselves. The Court therefore agrees with Plaintiff that credibility is not an issue here.

It is, as always, important to scrutinize the ALJ's decision to determine the basis for his conclusion on the issue raised by Plaintiff. The ALJ gave great weight to the opinion of Dr. Grodner, a consultative examiner, who concluded that Plaintiff's neuropathy would hinder his ability to engage in weight-bearing activities such as walking, standing, bending, pushing, or pulling. (Tr. 17). The ALJ found this opinion generally consistent with the evidence and with Plaintiff's activities of daily living. (Tr. 18). The ALJ gave only some weight to the state agency physicians' opinions, finding that they overstated Plaintiff's physical abilities. Id. The ALJ then rejected, as not fully credible, Plaintiff's claim that he could not work because "he could pass out on the job due to his diabetes and because he is in the hospital a lot." (Tr. 19). That decision was based in large part on the absence of objective symptoms of debilitating weakness or dizziness, and also on the fact that Plaintiff's daily activities were inconsistent with an inability to work because Plaintiff took care of his personal needs, took medication without the need for reminders, cared for a pet, fixed simple meals, drove, took walks, put together models, and socialized. (Tr. 20-21). The ALJ also mentioned the fact that Plaintiff still smoked, a fact deemed inconsistent with any claim of disabling COPD. (Tr. 22). However, when speaking to the primary argument advanced by the Commissioner in this Court, the ALJ said only that there was "evidence that the claimant has not been entirely compliant in taking prescribed medications" and that this "non-compliance would not be expected were his physical impairments and related symptoms severe within the meaning of the

-7-

Regulations, and strongly suggests that these conditions are stable, tolerable and adequately controlled without the need to comply with prescribed treatment recommendations." (Tr. 21). The ALJ emphasized, however, that non-compliance was "not a basis for denying his claim" but rather was "a basis for heavily discounting his overall credibility." Id.

The Commissioner has, in the opposing memorandum, attributed a reasoning process to the ALJ which cannot be found in the administrative decision. The ALJ did not conclude that, but for being non-compliant with treatment recommendations, Plaintiff would not have been hospitalized with the frequency which is documented in the record, or that he would not have had to seek emergency room treatment as often as he did. In fact, the ALJ did not engage in any meaningful discussion of the frequency of Plaintiff's hospital stays, or reach any conclusion about how that evidence might have impacted Plaintiff's ability to work on a sustained basis.

The finding made by the ALJ - that Plaintiff could work but not at his past occupations - is a step-five finding, a step where the Commissioner has the burden of proof. As one court has observed, "[i]t is far from plain that a person requiring hospitalization as frequently as Plaintiff — 69 days in less than three years (about two days per month) — would be able to maintain substantial gainful employment." Hawke-Dingman v. Comm'r of Social Security, 2012 WL 5328674, *12 (E.D. Mich. Sept. 11, 2012), adopted and affirmed 2012 WL 5306218 (E.D. Mich. Oct. 29, 2012). That observation applies equally here, and it is also "far from plain" that the ALJ adequately analyzed the evidence about the frequency of Plaintiff's hospitalization for diabetic neuropathy - a condition the ALJ found to be severe - or advanced any reviewable rationale for discounting that evidence. See, e.g., Diaz v. Chater, 55 F.3d 300, 307 (7th cir. 1995)("An ALJ's failure to consider an entire line of evidence falls below the

minimal level of articulation required").

Additionally, as Plaintiff points out, the ALJ made no finding of the type of failure to follow prescribed treatment which would justify outright denial of the claim, nor did he purport to.  His decision cannot be characterized in that way in light of his own statement to the contrary and the failure to cite to or follow required procedures on that issue.  See POMS 230.0.005; SSR 82-59.  Consequently, the case must be remanded for further consideration of the evidence.

VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v.</u>

-9-

<u>Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d
947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge